IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Westchester Fire Insurance Company, *Plaintiff,* | § | Civil Action No. 25-906-BAJ-EWD |
| v. | § | District Judge Brian A. Jackson |
| The Shaw Group, Inc., *et al.* *Defendants.* | § | Mag. Erin Wilder-Doomes |

**MEMORANDUM IN SUPPORT OF THE SHAW PARTIES' MOTION TO DISMISS OR IN THE ALTERNATIVE, STAY CLAIMS FOR DECLARATORY JUDGMENT ON THE DUTY TO INDEMNIFY**

CB&I Group Inc. formerly known as The Shaw Group, Inc. and CB&I Energy Services, LLC formerly Shaw Global Energy Services, Inc. (collectively, the "Shaw Parties") respectfully submit this Memorandum in Support of their *Motion to Dismiss or in the Alternative, Stay Claims for Declaratory Judgment on the Duty to Indemnify* ("Motion"), as follows:

The Shaw Parties' insurer, plaintiff Westchester Fire Insurance Company ("Westchester"), filed this declaratory judgment action seeking insurance coverage determinations under multiple excess/umbrella policies spanning conduct occurring over several decades.[1] Specifically, Westchester seeks declarations that it owes neither a duty to defend *nor an obligation to indemnify* the Shaw Parties concerning "hundreds of complaints" currently pending, in their early stages, in state court in Delaware.[2]

Declaratory relief on Westchester's duty to *indemnify* the Shaw Parties is premature and non-justiciable until liability and damages are determined—by judgment, settlement, or otherwise—in the hundreds of underlying Delaware lawsuits.[3] Therefore, this Court should dismiss Westchester's claims for declaratory judgment regarding its obligation to indemnify the

[1] *Second Amended Complaint for Declaratory Judgment* ("Complaint") (R. Doc. 46) at ¶¶ 32-46.
[2] Complaint (R. Doc. 46) at ¶¶ 1, 18.
[3] *See id.*

Shaw Parties for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and/or for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Alternatively, the Court should exercise its discretion under the Declaratory Judgment Act and dismiss or stay as premature Westchester's claims for declaratory relief on its indemnity obligations.

## I. ALLEGATIONS OF THE COMPLAINT & UNDERLYING LAWSUITS

Westchester sued the Shaw Parties as the named insureds under Westchester's Policies.[4] Westchester seeks declaratory judgments determining various insurance coverage obligations under multiple excess/umbrella policies[5] covering policy periods from 2003 through 2013.[6] Westchester has also sued defendants Occidental Chemical Corporation ("OxyChem"), Occidental Petroleum Corporation ("OxyPet"), and Glenn Springs Holding Co., Inc. ("Glenn Springs") (collectively, "Oxy Defendants") and seeks declaratory judgment that it has no duty to defend or indemnify the Oxy Defendants, which allegedly "seek coverage under the Westchester Policies issued to The Shaw Group, Inc."[7]

Westchester states that the Shaw Parties and Oxy Defendants are named as defendants in 227 lawsuits in Delaware state court ("Underlying Lawsuits"),[8] in which the claimants allege that as a result of working at a chlor-alkali plant (the "Facility")[9] in New Castle, Delaware, they sustained bodily injuries, including as a result of exposure to mercury, mercury vapors, and other

---

[4] Complaint (R. Doc. 46) at ¶ 2.

[5] Complaint (R. Doc. 46) at ¶¶ 32-46.

[6] Westchester identifies 13 excess or umbrella insurance policies issued to the Shaw Group for policy periods ranging from 2003 through 2013. (Complaint, R. Doc. 46, at ¶¶ 34-46, and *See* Policies, at R. Docs. 46-2, 46-3, 46-4, 46-5, 46-6,46-7, 46-8, 46-9, 46-10, 46-11, 46-12, 46-13 & 46-14.).

[7] Complaint (R. Doc. 46) at ¶ 3.

[8] Complaint (R. Doc. 46), at ¶¶ 1, 2, 18.

[9] Complaint (R. Doc. 46) alleges that the Facility manufactured chlorine and alkali, sodium hydroxide, or potassium hydroxide between 1965 and 2007/2008. *Id.* at ¶¶ 20-21.

allegedly harmful substances.[10] Westchester alleges that the Underlying Lawsuits seek recovery from Westchester's named insureds, the Shaw Parties, because the Shaw Parties provided decommissioning or demolition services at the Facility between 2005 and 2015 as subcontractors of the Occidental Defendants.[11] Westchester further alleges that the underlying claimants seek recovery from the Occidental Defendants because OxyChem and OxyPet owned, operated, and/or controlled the Facility between 1986 and 2015,[12] and from Glenn Springs because it provided or is liable for decommissioning or demolition services performed between 2007 and 2015.[13]

Westchester has sued solely pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.[14] and asserts that a "real and actual controversy exists between Westchester and the Defendants concerning whether Westchester is obligated to defend and indemnify them in the Underlying Lawsuits."[15] Westchester's Complaint alleges only, however, that the Underlying Lawsuits have been filed and, in general terms, what those lawsuits claim.[16] Westchester does *not* allege that any of the Underlying Lawsuits has proceeded to a final judgment, settlement, or other resolution.[17] Westchester also does not allege that it has made any payment for the alleged liability of any insured to any plaintiff in the Underlying Lawsuits.[18]

In fact, Westchester has not made any such payment.[19] Instead, all the Underlying Lawsuits are still in their incipient stages, with discovery not yet begun or only recently commenced. To

[10] Complaint (R. Doc. 46), at ¶ 30.
[11] Complaint (R. Doc. 46), at ¶¶ 26.
[12] Complaint (R. Doc. 46), at ¶¶ 23-25.
[13] Complaint (R. Doc. 46), at ¶ 28.
[14] Complaint (R. Doc. 46), at ¶ 16.
[15] Complaint (R. Doc. 46), at ¶ 49.
[16] Complaint (R. Doc. 46), at ¶¶ 1, 18-31, and R. Doc. 46-4.
[17] *See id*.
[18] *See id*. The allegations in the Complaint (R. Doc. 46) as to potential liability in the Underlying Lawsuits are framed in conditional, subjunctive, or hypothetical constructions, which is reflective of their entirely unsettled nature.
[19] Declaration of Christoper Ryan dated January 15, 2026 (attached hereto as Exhibit A) at ¶¶7-9.

date, not one defendant has been cast in judgment or agreed to settle any of the claims in the Underlying Lawsuits.[20]

## II. LEGAL AUTHORITIES & THE REASONS THIS MOTION SHOULD BE GRANTED

Westchester's claims for a declaratory judgment regarding its duty to indemnify under the Policies are premature and should be dismissed under either Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, which allows for consideration of evidence outside the pleadings, and/or for failure to state a claim under Rule 12(b)(6), as the consideration of evidence outside the pleadings is not required. Alternatively, the Court should exercise its considerable discretion under the Declaratory Judgment Action to dismiss or stay the indemnity-based claims pending resolution of the Underlying Lawsuits.

### A. <u>Motion to Dismiss Standards</u>

A defendant may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Under Article III of the United States Constitution, the subject matter jurisdiction of federal district courts is limited to justiciable claims. *See Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000); U.S. Const. art. III. Dismissal of a claim for lack of subject matter jurisdiction is proper "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). Therefore, to survive a Rule 12(b)(1) motion, the plaintiff must show that jurisdiction in fact exists, *including that the claim is justiciable. Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In examining a Rule 12(b)(1) motion, the district court is

---

[20] *Id.*

empowered to consider extrinsic evidence and matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A defendant may also move to dismiss an action for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, if accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). While the Court construes the complaint liberally, the Court will not "accept as true conclusory allegations or unwarranted deductions of fact." *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (citations omitted). In considering a motion under Rule 12(b)(6), the court is limited to the allegations in the plaintiff's complaint, and to those documents attached to defendant's motion to dismiss to the extent they are referred to in the complaint and are central to plaintiff's claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); *Williams v. E.I. du Pont de Nemours and Co.*, 154 F.Supp.3d 407, 412 (M.D. La. 2015) (internal citations omitted).

**B. <u>Ripeness and Standing Standards</u>**

To state a claim under the Declaratory Judgment Act, the plaintiff must show an "actual controversy" exists between the parties. *Orix Credit All.*, 2 F.3d at 896 (5th Cir. 2000) (quoting 28 U.S.C. § 2201(a)) ("In a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the right and other legal relations of any interested party seeking such declaration."). "[T]he case or controversy requirement of Article III of the United States Constitution is identical to the actual controversy requirement under the Declaratory Judgment Act." *State of Tex. v. W. Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989) (citations omitted).

"In determining whether to adjudicate a declaratory judgment action, district courts first are to consider whether the case is justiciable." *See Century Sur. Co. v. RTI Servs.*, L.L.C., 25-50242, 2025 WL 2851874, at *1 (5th Cir. Oct. 8, 2025) (not reported) (*citing Orix Credit Alliance*, 212 F.3d 891, 895 (5th Cir. 2000); *Roake v. Brumley*, 141 F.4th 614, 629 (5th Cir. 2025) (reversed on other grounds)). Justiciability requires a ripe claim asserted by a party with standing to sue. *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010). Ripeness and standing are constitutional prerequisites to the exercise of subject matter jurisdiction. *See id.*; *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985); *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922 (5th Cir. 2017).

A declaratory action should be dismissed for lack of ripeness when it fails to present an "actual controversy," which requires the plaintiff to demonstrate "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Orix Credit All.*, 212 F.3d at 896 (*quoting Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)). There "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, CIV.A. 05-4202, 2006 WL 2850178, at *3 (E.D. La. Oct. 2, 2006) (not reported) (*quoting Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241; 57 S.Ct. 461, 464; 81 L.Ed. 617 (1937)). Ripeness is a question of timing and serves to prevent "courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas*, 473 U.S. at 580 (citation omitted).

For standing, the plaintiff must meet three requirements, including to show "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not conjectural or hypothetical." *Louisiana State Conference of Nat'l Ass'n for*

*Advancement of Colored People v. Louisiana*, 490 F.Supp.3d 982, 1004, 1005 (M.D. La. 2020), *aff'd sub nom. Allen v. Louisiana*, 14 F.4th 366 (5th Cir. 2021).[21] "[T]he doctrines of ripeness and standing "often overlap in practice, particularly in an examination of whether a plaintiff has suffered a concrete injury." *Lopez*, 617 F.3d at 342. (5th Cir. 2010). "A party has standing to bring an action under the [DJA] if an 'actual controversy' exists, 28 U.S.C. § 2201(a), which 'is the same as an Article III case or controversy.'" *Arris Group, Inc. v. British Telecomm., Inc.*, 639 F.3d 1368, 1373 (Fed. Cir. 2011) (citation omitted).

Even when the court determines it has subject matter jurisdiction over an actual controversy between the parties, it can exercise its broad discretion under the Declaratory Judgment Act to abstain from deciding the matter and dismiss or stay the case for concerns of fairness and judicial efficiency. *See Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (*quoting Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir.1983)) ("It is well established that a district court 'is not required to provide declaratory judgment relief, and it is a matter for the district court's sound discretion whether to decide a declaratory judgment action.'") (internal citations omitted).

### C. The Duties to Defend and Indemnify are Separate and Distinct; and the Duty to <u>Indemnify is Not Ripe for Determination Before the Underlying Lawsuits</u>

A liability insurer's duties to defend and indemnify are separate and distinct. *Cambridge Integrated Servs. Grp., Inc. v. Concentra Integrated Servs., Inc.*, 697 F.3d 248, 254 (5th Cir. 2012); *Morad v. Aviz*, Civ. A. No. 12-2190, 2013 WL 1403298, at *3 (E.D. La. Apr. 5, 2013) (not

[21] The other two elements of standing are: (2) the alleged injury must share a causal connection with the conduct complained of so that "the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Louisiana State Conference of Nat'l Ass'n for Advancement of Colored People v. Louisiana*, 490 F.Supp.3d 982, 1004-05 (M.D. La. 2020), *aff'd sub nom. Allen v. Louisiana*, 14 F.4th 366 (5th Cir. 2021).

reported); *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009) (citing *Elliot v. Cont'l Cas. Co.*, 06-1505 (La. 2/22/07); 949 So.2d 1247, 1250). An insurer may have a duty to defend a lawsuit but may not have a duty to indemnify the insured. *Hartford Casualty Insurance Co. v. DP Engineering, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016). "Alternatively, an insurer may not have a duty to defend a lawsuit but still end up having a duty to indemnify." *Id.*; *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 254 (5th Cir. 2011) (citation omitted). These duties can arise independently and even be at odds with one another because the duty to defend is determined by *pleadings*, but the duty to indemnify is determined by *facts* that are only eventually ascertained in the underlying lawsuit. *DP Engineering*, 827 F.3d at 430; *Tower Nat. Ins. Co. v. Dixie Motors*, No. CIV.A. 14-1634, 2015 WL 2452336, at *2 (E.D. La. May 21, 2015) (not reported). Therefore, the duty to indemnify typically *cannot* be adjudicated until there has been a judgment in the underlying suit because facts proven at trial may differ, even if slightly, from the allegations. *DP Engineering*, 827 F.3d at 430; *Peachtree*, 647 F.3d at 254–55; *Endurance Am. Ins. Co. v. ABC Caulking Contractors, Inc.*, No. CV 20-174-JWD-RLB, 2021 WL 4097142, at *7 (M.D. La. Sept. 8, 2021) (not reported).[22]

Because the duty to defend does not depend on the outcome of the lawsuit but rather solely upon the allegations in the pleadings, a duty to defend claim is considered ripe for adjudication after suit is filed but before resolution of the insured's underlying suit. *Endurance Am. Ins.*, 2021 WL 4097142, at *7 (M.D. La. Sept. 8, 2021) (citing *Columbia Cas. Co. v. Georgia & Fla. RailNet, Inc.*, 542 F.3d 106, 110 (5th Cir. 2008); s*ee also, W. Heritage Ins. Co. v. River Entm't*, 998 F.2d

[22] Courts within the Fifth Circuit have stated in several declaratory judgment actions that whether an insurer owes a duty to indemnify is not ripe when the underlying lawsuit has not been resolved because of, *inter alia*, the difficulty of interpreting specific exclusions that require fact-specific inquiries and factual development in the underlying cases. This rule is the same under both Louisiana and Texas law. *See Coregis Ins. Co. v. School Bd. Of Allen Parish*, 2008 WL 2325632, *2 (5th Cir. 2008) (not reported); *Houston Specialty Insurance Co. v. Ascension Insulation & Supply, Inc.*, 2018 WL 4031778, *5 (W.D. La. 2018) (not reported); *Endurance Am. Ins.*, 2021 WL 4097142, at *4 n. 3.

311, 312–13 (5th Cir.1993); *Elliott*, 949 So.2d at 1250 (*citing Steptore v. Masco Const. Co., Inc.*, 643 So.2d 1213, 1218 (La.1994)). "In contrast, the duty to indemnify cannot be determined until the insured's liability has been resolved, because the duty to indemnify 'is triggered by the actual facts that establish liability in the underlying suit.'" *Endurance Am. Ins.*, 2021 WL 4097142, at *7 (citing *Columbia Cas. Co.*, 542 F.3d at 110(5th Cir. 2008); *Guar. Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir. 2000)(overruled on other grounds); and *Martco*, 588 F.3d at 872). Pursuant to this well-established jurisprudence, the Shaw Parties move to dismiss (or stay) Westchester's claims for a declaratory judgment on its duty to indemnify.

### D. Westchester's Claims for a Declaration of Its Duties to Indemnify Under the Policies Are Unripe and Not Justiciable

A declaratory action should be dismissed for lack of ripeness "when the issue presented is abstract or hypothetical; a case is not ripe if further factual development is required." *Century Sur. Co.*, 2025 WL 2851874, at *1 (5th Cir. Oct. 8, 2025) (not reported) (*citing DP Engineering*, 827 F.3d at 431).

This Court need not look far afield to determine whether this case is ripe or justiciable. Fifth Circuit courts have frequently addressed the closely related issues of ripeness, justiciability, and prematurity in cases, like the instant case, in which an insurer seeks to resolve its duty to indemnify before liability in the underlying case against the insured has been established. *See U.S. Fire Ins. Co. v. A-Port, LLC*, CIV.A. 14-441, 2015 WL 1416490, at *2 (E.D. La. Mar. 26, 2015) (not reported) (action seeking to declare an insurer's indemnity obligations is "'premature and non-justiciable' until 'the underlying issue of liability is resolved and the defendant is cast in judgment.'") (*quoting New England Ins. Co. v. Barnett*, 465 Fed. Appx. 302, 308 (5th Cir. 2012)); *Endurance Am. Ins.*, 2021 WL 4097142, at *7 (M.D. La. Sept. 8, 2021) ("Louisiana law generally provides that until the underlying issue of liability is resolved and the defendant is cast in judgment,

the issue of indemnity is premature and nonjusticiable."); *Martco*, 588 F.3d at 872 (factual development regarding liability is necessary before the duty to indemnify can be decided and holding that the duty to indemnify claim was only ripe because the underlying litigation had already been completed); *Coregis Ins. Co*, 2008 WL 2325632, at *2 (5th Cir. June 6, 2008) ("the indemnity issue is nonjusticiable pending resolution of the liability suit").

For example, in *Century Surety*, an excess insurer filed suit against its insured seeking a declaration on the insurer's indemnity obligations under the excess policy. C*entury Sur. Co.*, 2025 WL 2851874, at *1 (5th Cir. Oct. 8, 2025). The court found the excess insurer's indemnity obligations were not ripe for decision because the insured's liability in the underlying case was still undetermined and the insurer's indemnity obligations were further contingent upon exhaustion of the insured's primary insurance policy. *Id*. (*citing DP Engineering*, 827 F.3d at 431 (5th Cir. 2016)). Because there was no actual controversy regarding the excess insurer's speculative indemnity obligations, the court dismissed the insurer's declaratory action for lack of subject matter jurisdiction. *Id.; see also, Solstice Oil & Gas I, L.L.C. v. Seneca Ins. Co.*, 655 Fed. Appx. 221, 226 (5th Cir. 2016) (dismissing declaratory action on insurer's indemnity obligation; "[t]he applicability of any exclusions … are likewise nonjusticiable at this juncture, as none of them have been conclusively proven."); *Coregis Ins. Co.*, 2008 WL 2325632, at *2 (5th Cir. June 6, 2008) (reversing summary judgment in favor of insurer on duty to indemnify for lack of ripeness); *Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc.*, CIV.A. 10-1682, 2012 WL 1198611, at *11 (E.D. La. Apr. 10, 2012) (not reported) ("[b]ecause liability in the underlying case has not yet been determined, the Court denies as premature State Farm's motion [for summary judgment] on the duty to indemnify.").

Like the excess insurer in *Century Surety*, Westchester—also an excess insurer—seeks declaratory judgment that it does not have a duty to indemnity under the Policies ***if and when***

Defendants are found liable in the Underlying Lawsuits. Indeed, the unsettled nature of any party's liability in the Underlying Lawsuits is reflected in Westchester phrasing its allegations on this issue in conditional, subjunctive or hypothetical terms. *See* Complaint (R. Doc. 46), at ¶ 5 ("…, **any liability assessed** against the Shaw Defendants in the Underlying Lawsuits is attributable to the wrongdoing…"), ¶ 7 ("…Westchester also respectfully requests the Court render a judgment in this action declaring that **to the extent the Shaw Defendants are held liable in the Underlying Lawsuits**, such liability is…"(emphasis added)). Westchester does not allege that any insured liability for any Underlying Lawsuits has yet been determined and/or paid,[23] and in fact, no defendant's liability for any of the hundreds of Underlying Lawsuits has yet been determined.[24]

For these reasons, Westchester's duty to indemnify under any of the various Policies is not yet justiciable. There is no actual controversy on this issue because the Underlying Lawsuits remain pending. Until they are resolved by judgment, settlement or otherwise, the *contingent* liability of the Shaw Parties remains hypothetical and nonjusticiable. Therefore, pursuant to a straightforward application of the rule stated in the foregoing authorities, Westchester's claims for declaratory judgment on its duty to indemnify should be dismissed. *See Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc.*, 766 F. App'x 768, 770 (11th Cir. 2019) (actions regarding the duty to indemnify are "not ripe until the insured's liability [is] established because the issue 'might never arise'") (*quoting Am. Fid. & Cas. Co. v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960)).

[23] *See* Complaint (R. Doc. 46).
[24] Declaration of C. Ryan (Exhibit A) at ¶¶7-9.

### E. Westchester Cannot Meet the "Exceedingly Narrow Exception" to the General Rule that a Declaratory Judgment on the Duty to Indemnify <u>Is Not Justiciable Before the Underlying Liability is Determined</u>

In *Endurance Am. Ins.*, 2021 WL 4097142, at *7 (M.D. La. Sept. 8, 2021), Judge deGravelles recognized an "exceedingly 'narrow exception'" to the general rule that a declaratory judgment on a duty to indemnify is not justiciable before the insured's liability is determined. *Id.*, at *8. Pursuant to this narrow exception, courts can adjudicate duty-to-indemnify claims before resolution of the underlying suit only if two requirements are satisfied: "First, the court must determine through application of the eight corners rule that the insurer does not owe a duty to defend. Second, the court must determine that the same reasons the insurer owes no duty to defend also show that there is ***<u>no chance</u>*** any of the underlying claims could be covered under the policy down the road." *Id.* (emphasis added). This "exceedingly narrow exception" is invoked only when "there is ***<u>no possibility</u>*** that the insurer will ever have a duty to indemnify." *Id*. Judge deGravelles further explained that "the exception … is not necessarily invoked simply because the insurance policy appears to exclude coverage for the claims based on the allegations made in the complaint." *Id.* If there is even "a slight possibility that any one of the claims will 'broaden or change' such that it might be covered under the policy, then the exception is not satisfied; [and] the indemnity obligation is premature until the insured's liability is determined." *Id.*

An assertion by Westchester's that it absolutely owes no duty to defend because there is no chance of owing indemnify for any of the hundreds of Underlying Lawsuits is belied by its own actions. Instead of issuing an outright denial letter, Westchester has already agreed to participate in the Shaw Parties' defense but subject to a reservation of rights.[25] In any event, the Court need not decide Westchester's duty to defend at this time because Westchester clearly cannot meet the

[25] Declaration of Ryan (Exhibit A) at ¶10 and its Attachment 2 at pages 1 and 5.

exception's second requirement to show "***no possibility*** that the insurer will ever have a duty to indemnify." *Endurance Am. Ins.*, 2021 WL 4097142, at *8.

In *Endurance*, the Middle District of Louisiana granted an insured's Rule 12(b)(1) motion and dismissed its insurer's declaratory action on its duty to indemnify for a pending lawsuit arising from defective construction allegedly performed by the insured's subcontractor. *Id*. at *1-2. In opposition to the insured's Rule 12(b)(1) motion, the insurer argued the narrow exception applied and that its duty to indemnify was justiciable before its insured's liability was resolved in the underlying lawsuit because the same policy exclusions which allegedly foreclosed its duty to defend, also negated its duty to indemnify. *See id*. at *6. This Court rejected the insurer's argument, finding that even if the exclusions foreclosed the insurer's duty to defend, it was *possible* that facts ultimately developed in the underlying lawsuit could trigger the insurer's duty to indemnify. *Id*. at * 11; *see also Arch Ins. Co. v. Outreach Cmty. Dev. Corp.*, CV 15-721-JWD-EWD, 2017 WL 8944048, *7 (M.D. La. Dec. 21, 2017) (not reported) (denying insurer's motion for summary judgment on the duty to indemnify even where "very likely" a policy exclusion would negate coverage as it was "*possible* that the underlying action will broaden or change to encompass some claim that might be covered under the Policy") (emphasis in original).

This case involves hundreds of Underlying Lawsuits, at least 13 Policies, and several alleged exclusionary clauses.[26] Moreover, Westchester's indemnity duties are not only contingent upon the Shaw Parties being cast in judgment in the Underlying Lawsuits, but also upon exhaustion

[26] *See* Policies, at R. Docs. 46-2, 46-3, 46-4, 46-5, 46-6,46-7, 46-8, 46-9, 46-10, 46-11, 46-12, 46-13 & 46-14; wherein each such policy contains an insuring agreement providing, subject to its specific terms, conditions, limitations and exclusions, that Westchester will pay on behalf of the insured those sums in excess of the retention and/or underlying insurance which the insured **by reason of liability imposed by law shall become legally obligated to pay as damages** for: "Bodily Injury"; "Property Damage": "Personal Injury"; or "Advertising Injury"; arising out of an "Occurrence" during the Policy Period.

of the Shaw Parties' primary, underlying liability insurance and/or retained limits.[27] In short, this is by no means a simple case, and there is much still to be determined in the Underlying Lawsuits that could inform the inquiry into Westchester's duty of indemnity. Without letting the hundreds of Underlying Lawsuits play out, it is not possible to say that "there is no chance any of the underlying claims could be covered under the policy down the road." *See Endurance Am. Ins.*, 2021 WL 4097142, at *11; *Arch Ins.*, 2017 WL 8944048, at *7.

Therefore, and particularly in a complex case like this one, the "exceedingly narrow exception" identified in *Endurance* should not be construed to swallow the well-established general rule that a declaratory judgment on the duty to indemnify is not justiciable until the underlying liability is determined. *See DP Engineering*, , 827 F.3d at 431 (5th Cir. 2016) (distinguishing between simpler, single-issue cases and the more complex case presented in which "an array of possible factual and legal scenarios" could have caused the gantry claim collapse at issue, at least "some of which may create coverage" under the three insurance policies and the professional services exclusions therein).

**F. Alternatively, the Court Should Exercise Its Discretion Under the Declaratory Judgment Act and Dismiss or Stay Westchester's Claims for a Declaration as to the Duty to Indemnify.**

"It is well established that a district court 'is not required to provide declaratory judgment relief, and it is a matter for the district court's sound discretion whether to decide a declaratory judgment action.'" *Griffin*, 876 F.2d at 28 (5th Cir. 1989) (*quoting Mission*, 706 F.2d at 601 (5th Cir.1983)); also, *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942) and *Wilton v.*

[27] *See* Policies, at R. Docs. 46-2, 46-3, 46-4, 46-5, 46-6, 46-7, 46-8, 46-9, 46-10, 46-11, 46-12, 46-13 & 46-14; *accord*, allegations of Complaint (R. Doc. 46) at ¶¶ 89-91 ("Each Westchester Policy only provides coverage, if any is available, in excess of that Scheduled underlying insurance, and all applicable limits of liability, including aggregate limits of insurance, and satisfaction of per occurrence deductibles and/or self-insured retentions") and ("…to the extent any Westchester Policy provides coverage for any of the claims in the Underlying Lawsuits, such coverage, if any, applies only in excess of underlying limits of insurance, including aggregate limits of insurance, and satisfaction of underlying per occurrence deductibles and/or self-insured retentions.").

*Seven Falls Co.*, 515 U.S. 277, 286–90 (1995). Factors relevant to whether a district court should exercise its discretion to hear a declaratory action include: "[1] whether matters in controversy can be fully litigated in a pending state court proceeding; [2] whether the declaratory complaint was filed in anticipation of another suit and is being used for the purpose of forum shopping; [3] the possible inequities in permitting the plaintiff to gain precedence in time and forum; [4] inconvenience to the parties or the witnesses." *Palmer v. Boucvalt*, 789 F.Supp. 211, 212 (M.D. La. 1992) (citing *Griffin*, 876 F.2d at 28-29(5th Cir. 1989)).

First, the underlying Delaware state court proceedings or a parallel proceeding in Delaware would provide an adequate and comprehensive forum in which all coverage issues can be resolved. Delaware procedural law permits the assertion of third-party claims and declaratory relief concerning insurance coverage arising from the same operative facts as the underlying liability action. See Del. Super. Ct. Civ. R. 14; 10 Del. C. § 6501 *et seq*. Second, the filing of this declaratory judgment action in Louisiana—far removed from the locus of operative facts—suggests forum shopping, a consideration that the relevant factors guide courts to guard against. Third, retaining jurisdiction would foster piecemeal litigation involving only one of multiple layers of insurance coverage, thereby creating a risk of inconsistent factual or legal determinations in coverage rulings (issues of applicability of exclusions and the policies' exhaustion, allocations, stacking, etc.), resulting in possible inequitable outcomes among insurers and insureds.

Fourth, considerations of convenience and practical litigation realities weigh heavily in favor of abstention. Delaware is the situs of the alleged conduct, injuries, and exposure in all of the hundreds of Underlying Lawsuits. In contrast, none of the alleged conduct, injuries, or exposures occurred in Louisiana.

In addition to allowing for the determination of the alleged liability of Westchester's insureds in the still-young Underlying Lawsuits now pending in Delaware, deferring the determination of Westchester's duty, as an excess/umbrella insurer, to indemnify would also allow the parties to determine whether and to what extent the primary layers of insurance are exhausted.

Therefore, in the alternative to dismissing the claims under Rule 12(b)(1) or 12(b)(6), the Court should exercise its discretion and dismiss or stay Westchester's declaratory judgment action as to indemnity. *See AIG Specialty Insurance Co. v. PetroTech Solutions, LLC,* No. 21-CV-3496, 2022 WL 20717273, *3 (W.D. La. May 19, 2022) (not reported) (granting insured's motion to stay insurer's claim for declaratory judgment on the duty to indemnify).

## III. CONCLUSION

For the foregoing reasons, respectfully, the Court should grant this Motion, recognize Westchester's claims for declaratory judgment on its duty to indemnify as premature, and dismiss on the basis of a lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and/or for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In the alternative, the Court should exercise its discretion under the Declaratory Judgment Act and dismiss or stay Plaintiff's indemnity-based claims.

Respectfully submitted,

Robert S. Stassi (La. Bar No. 25259) *Lead Attorney*
Russell L. Foster (La Bar. No. 26643)
Charles Meeks (La. Bar. No. 40448)
Patrick R. Stewart (La. Bar. No. 40957)
CARVER DARDEN KORETZKY TESSIER
FINN BLOSSMAN & AREAUX LLC
1100 Poydras St., Suite 3100
New Orleans, LA 70163
Telephone: (504) 585-3800
Facsimile: (504) 585-3801
stassi@carverdarden.com
foster@carverdarden.com
pstewart@carverdarden.com
meeks@carverdarden.com

Attorneys for CB&I Group Inc.
and CB&I Energy Services, LLC

4911-1836-8386, v. 8