**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

WESTCHESTER FIRE INSURANCE COMPANY,

*Plaintiff,*

v.

THE SHAW GROUP, INC.; SHAW GLOBAL ENERGY SERVICES, INC.; OCCIDENTAL CHEMICAL CORPORATION; OCCIDENTAL PETROLEUM CORPORATION; and GLENN SPRINGS HOLDINGS, INC.

*Defendants*.

Case No. 3:25-cv-00906-BAJ-EWD

District Judge Brian A. Jackson

Mag. Erin Wilder-Doomes

**PLAINTIFF WESTCHESTER FIRE INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO THE SHAW DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE, STAY CLAIMS FOR DECLARATORY JUDGMENT ON THE DUTY TO INDEMNIFY**

## TABLE OF CONTENTS

**I. INTRODUCTION** .......... 1

**II. FACTUAL BACKGROUND** .......... 2

**A. The Underlying Lawsuits** .......... 2

**B. The Westchester Policies** .......... 4

**C. The Coverage Litigation** .......... 4

**III. LEGAL STANDARD** .......... 5

**IV. LEGAL ARGUMENT** .......... 6

**A. The Indemnity Claims Are Justiciable** .......... 6

**B. The *Trejo* Factors Weigh in Favor of the Court Exercising Jurisdiction Over the Indemnity Claims** .......... 14

**V. CONCLUSION** .......... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American States Insurance Co. v. Bailey*,
133 F.3d 363 (5th Cir. 1998) ....................8, 11

*Arch Insurance Co. v. Outreach Community Development Corp.*,
No. 15-721-JWD-EWD, 2017 WL 8944048 (M.D. La. Dec. 21, 2017) ....................9, 10

*Breazeale v. T.T*,
177 So.3d 192 (La. App. 1st Cir. 2013)....................13

*Canal Indemnity Co. v. Rapid Logistics Inc.*,
514 Fed.Appx 474 (5th Cir. Feb. 22, 2013)....................9, 10

*Centennial Insurance Co. v. Ryder Truck Rental, Inc.*,
149 F.3d 378 (5th Cir. 1998) ....................9

*Century Surety Co. v. Hardscape Construction Specialties Inc.*,
578 F.3d 262 (5th Cir. 2009) ....................10

*Century Surety Co. v. RTI Services, LLC*,
2025 WL 2851875 (5th Cir. Oct. 8, 2025)....................13

*Circle C Enterprises, Inc. v. Associated Industries Ins. Co.*,
No. 21-253-JWD-RLB, 2022 WL 16727129 (M.D. La. Nov. 4, 2022) ....................10

*Columbia Casualty Co. v. Georgia & Florida RailNet, Inc.*,
542 F.3d 106 (5th Cir. 2008) ....................9

*Coregis Insurance Co. v. School Board of Allen Parish*,
2008 WL 2325632 (5th Cir. June 6, 2008) ....................13

*Endurance American Insurance Co. v. ABC Caulking Contractors, Inc.*,
No. CV 20-174-JWD-RLB, 2021 WL 4097142 (M.D. La. Sept. 8, 2021) ....................9

*Farmers Texas County Mutual Insurance Co. v. Griffin*,
955 S.W.2d 81 (Tex. 1997)....................9

*Gilchrist Construction Company, LLC v. Travelers Indemnity Corporation*,
416 F.Supp.3d 619 (W.D. La. 2019)....................9

*Hall v. Louisiana*,
974 F.Supp.2d 978 (M.D. La. 2013)....................6

*LCS Corrections Services, Inc. v. Lexington Insurance Co.*,
800 F.3d 664 (5th Cir. 2015) ....................10

*Louisiana Citizens Property Insurance Co. v. Age*,
104 So. 3d 675 (La. App. 4 Cir. 2012) ....................11

*Martco Ltd. Partnership v. Wellons, Inc.*,
588 F.3d 864 (5th Cir. 2009) ....................13

*Montpelier U.S. Insurance Co. v. Henry*,
2014 WL 1713407 (W.D. La. 2014)....................8

*Moore v. Home Depot U.S.A., Inc.*,
No. 16-cv-00810, 2017 WL 5180431 (M.D. La. Nov. 8, 2017)....................10

*Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*,
566 F.3d 452 (5th Cir. 2009) ....................10

*Orix Credit Alliance, Inc. v. Wolfe*,
212 F.3d 891 (5th Cir. 2000) ....................7

*Penn-America Insurance Co. v. Haros, LLC*,
2023 WL 2997863 (5th Cir. 2023) ....................7

*Ramming v. U.S.*,
281 F.3d 158 (5th Cir. 2001) ....................6

*Rowan Companies, Inc. v. Griffin*,
876 F.2d 26 (5th Cir. 1989) ....................7

*Sherwin-Williams Co. v. Holmes County*,
343 F.3d 383 (5th Cir. 2003) ....................14

*Solstice Oil & Gas I, LLC v. Seneca Insurance Co.*,
655 Fed. Appx. 221 (5th Cir. July 21, 2016) ....................13

*St. Paul Insurance Co. v. Trejo*,
39 F.3d 585 (5th Cir. 1994) ....................14

*Star-Tex Resources, L.L.C. v. Granite State Insurance Co.*,
553 Fed.Appx. 366 (5th Cir. 2014)....................10, 11

*Steptore v. Masco Construction Co.*,
643 So.2d 1213 (La. 1994) ....................11

*Travelers Casualty & Surety Co. of America v. University Facilities, Inc.*,
CIV.A. 10-1682, 2012 WL 1198611 (E.D. La. Apr. 10, 2012)....................13

*Western Alliance Insurance Co. v. Northern Insurance Co. of New York*,
176 F.3d 825 (5th Cir. 1999) ....................................................................................8

**Statutes, Rules, and Other Authorities**

28 U.S.C. § 2201 ........................................................................................................ *passim*

Fed. R. Civ. P. 12 ..........................................................................................................6, 12

U.S. Const. art. III ..............................................................................................................6

Plaintiff Westchester Fire Insurance Company ("Westchester") hereby files this Memorandum of Law in Opposition to the Shaw Defendants'[1] Motion to Dismiss or in the Alternative, Stay Claims for Declaratory Judgment on the Duty to Indemnify ("Motion") (R. Doc. 50).

## I. INTRODUCTION

Despite abundant Fifth Circuit Court of Appeals precedent establishing that the duty to indemnify *is* justiciable in a declaratory judgment action even before resolution of underlying litigation, the Shaw Defendants assert that this Court may not address those issues yet. The Shaw Defendants have been named in hundreds of underlying pollution-liability lawsuits pending in Delaware state court and seek coverage under umbrella and excess liability policies issued by Westchester. A ruling on the indemnity issues, before the underlying litigation is resolved, would not be premature. Indeed, for precisely the same reasons that there is no duty to defend, there is no duty to indemnify.

Westchester does not seek an advisory opinion based on hypothetical facts; it seeks resolution of discrete policy-interpretation issues that will govern its defense and indemnity obligations, regardless of how the underlying lawsuits are resolved. Those issues include (1) whether, under the "eight corners" rule, the Dust and Silica and Total Pollution exclusions bar coverage completely and (2) whether underlying coverage is even sufficiently exhausted to trigger Westchester's umbrella and excess policies, given allocation issues involving alleged injuries spanning over multiple decades. These are precisely the types of issues that the Declaratory Judgment Act was designed to address—providing relief from uncertainty and insecurity regarding the parties' rights and obligations under the Westchester policies. Because there is no conceivable

---

[1] "Shaw Defendants" refer collectively to CB&I Group Inc. formerly known as The Shaw Group, Inc. and CB&I Energy Services, LLC, formerly Shaw Global Energy Services, Inc.

proof that could be developed in the underlying Delaware litigation that could establish coverage under the Westchester policies—and, at the very least, the same reasons that plainly negate any duty to defend also negate any duty to indemnify—the indemnity issues are ripe for judicial review. And, in any event, none of the factors favoring a stay applies here. Therefore, for the reasons further addressed below, this Court should deny the Shaw Defendants' motion to dismiss and/or stay.

## II. FACTUAL BACKGROUND

### A. The Underlying Lawsuits

Two hundred and twenty-seven lawsuits have been filed against the Shaw Defendants and others in the Superior Court of the State of Delaware, New Castle County alleging pollution-related bodily injury arising from activities at a chlor-alkali facility located on River Road in New Castle, Delaware (collectively, the "Underlying Lawsuits").[2] The plaintiffs in the Underlying Lawsuits allege generally that they (or their spouses) performed work at the River Road Facility, where they came into contact with, were exposed to, inhaled, ingested, and/or otherwise absorbed dangerous levels of mercury, mercury vapors, and other toxic chemicals during periods spanning from the 1960s through 2016.[3] Apart from the names of the underlying plaintiffs and the time period in which each underlying plaintiff (or their spouses) performed work at the River Road Facility, the allegations in the Underlying Lawsuits are virtually identical.[4]

According to the Underlying Lawsuits, the River Road Facility was built in 1965 to produce chlorine (Cl2) and alkali, sodium hydroxide (NaOH) or potassium hydroxide (KOH), through electrolysis of a salt solution. This manufacturing method, termed the "chlor-alkali"

---

[2] *Second Amended Complaint for Declaratory Judgment* ("Second Am. Compl."), R. Doc. 46 at ¶¶ 1, 18.
[3] *Id.* at ¶¶ 30–31.
[4] *Id.* at ¶ 19.

method, used mercury as a necessary component in the production of chlorine. The manufacturing activities at the River Road Facility continued from the 1960s to 2007 or 2008, when the River Road Facility was decommissioned.[5]

The Underlying Lawsuits assert claims against "operating defendants," who built and operated the River Road Facility, and "contractor defendants," who provided decommission and demolition services. Defendants Occidental Chemical Corporation ("OxyChem") and Occidental Petroleum Corporation ("OxyPet") are identified as "operating defendants" in the Underlying Lawsuits, with the Underlying Lawsuits alleging that in 1986, OxyChem and OxyPet purchased the River Road Facility from underlying defendant Diamond Shamrock, Inc. The Underlying Lawsuits allege that OxyChem and OxyPet operated the River Road Facility between 1986 and 2015, and were responsible for producing, manufacturing, researching, analyzing, formulating, processing, inspecting, and/or selling chlorine and alkali, sodium hydroxide or potassium hydroxide with full knowledge of the dangerous nature of exposure to mercury, mercury vapors, and other toxic chemicals.[6]

The Shaw Defendants are identified as "contractor defendants," with the Underlying Lawsuits alleging that between 2005 and 2015, the Shaw Defendants provided decommissioning or demolition services, consulted, and/or controlled personnel on the premises, or in the vicinity, of the River Road Facility for one or more of the "operating defendants." The Underlying Lawsuits further allege that the Shaw Defendants provided these decommissioning services "with full knowledge of the dangerous nature of exposure to mercury, mercury vapors, and other toxic chemicals."[7]

---

[5] *Id.* at ¶¶ 20-21.
[6] *Id.* at ¶¶ 22-25.
[7] *Id.* at ¶¶ 26–27.

### B. The Westchester Policies

As set forth in Westchester's Second Amended Complaint for declaratory judgment, Westchester issued umbrella liability policies to Shaw Group, Inc. as Named Insured for successive annual policy periods from September 1, 2003 to April 15, 2013, and excess insurance policies to Shaw Group, Inc. as Named Insured for successive annual policy periods from September 1, 2006 to September 1, 2009 (collectively, the "Westchester Policies").[8] Defendants Occidental Chemical Corporation, Occidental Petroleum Corporation, and Glenn Springs Holdings (collectively, the "Oxy Defendants") are not identified as insureds or additional insureds in the Westchester Policies. The Westchester umbrella and excess policies sit above various primary policies issued by other insurers and provide that Westchester has no duty to defend unless until the underlying primary policies have been exhausted.

### C. The Coverage Litigation

Westchester seeks a declaration that it has no duty to defend or indemnify the Shaw Defendants, or the Oxy Defendants as purported additional insureds, under the Westchester Policies (Second Am. Compl., R. Doc. 46).[9] Among other complete or partial defenses to coverage, Westchester's pleading asserts that it has no duty to defend or indemnify in the Underlying Lawsuits because:

- The Westchester Policies' Silica, Dust and Particulate Matter Exclusion[10] bars coverage because the Underlying Lawsuits arise out of, result from, or are in any

[8] *Id.* at ¶¶ 32-46.
[9] Westchester filed its original complaint in this Action on October 9, 2025. (R. Doc. 1). The operative complaint is the Second Amended Complaint, filed January 7, 2026. (R. Doc. 46).
[10] The Westchester policies issued for the 2003-2004 policy period contain a slightly narrower Silica exclusion. But the Underlying Lawsuits allege that Shaw was not on the site until 2005, so that exclusion is irrelevant to this dispute.

way related to, in whole or in part, the inhalation or breathing in of dust or particulate matter—*i.e.*, mercury (a silvery-white poisonous *metallic* element)[11]

- The Westchester Policies' "Total Pollution" Exclusion bars coverage because the Underlying Lawsuits arise from the actual or alleged discharge of "pollutants," including mercury.[12]
- The Westchester Policies' Employer's Liability Exclusions bar coverage to the extent the Underlying Lawsuits allege injuries to employees of the insureds arising out of and in the course of their employment.[13]
- The Westchester Policies' Workers Compensation Exclusions bar coverage for any claims asserted by Underlying Plaintiffs related to any alleged obligations under workers' compensation, disability benefits, unemployment compensation, or any similar law.[14]
- There is no coverage for any Defendant that is not an "Insured" under the Westchester Policies.[15]
- Even if those exclusions do not bar coverage (and they do), other defenses limit or bar coverage, including the fact that there is no duty to defend under the Westchester Policies unless and until the underlying primary policies are exhausted.[16]

## III. LEGAL STANDARD

The Shaw Defendants have moved to dismiss Westchester's complaint under Rules 12(b)(1) or 12(b)(6) as to the duty to indemnity or, in the alternative, to stay the litigation as to

[11] *Id.* at ¶¶ 54-63.
[12] *Id.* at ¶¶ 64-76.
[13] *Id.* at ¶¶ 111-15.
[14] *Id.* at ¶¶ 116-20.
[15] *Id.* at ¶¶ 92-100.
[16] *Id.* at ¶¶ 87-91.

those issues. Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *See Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted). A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court "must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *See, e.g.*, *Hall v. Louisiana*, 974 F.Supp.2d 978, 986 (M.D. La. 2013). The Shaw Defendants have not satisfied those standards here.

## IV. LEGAL ARGUMENT

The Shaw Defendants' motion should be denied because the indemnity issues are justiciable and ripe. As for the Shaw Defendants' alternative argument, the Court should exercise jurisdiction over the indemnity issues because the *Trejo* factors favor retaining jurisdiction and proceeding with this case.

### A. The Indemnity Claims Are Justiciable

Defense *and indemnity* issues under the Westchester Policies are justiciable. Under Article III of the U.S. Constitution, a federal court's judicial power extends to "Cases" or "Controversies." U.S. Const. art. III, cl. 2. Accordingly, the federal Declaratory Judgment Act empowers a federal court to enter a judgment "declar[ing] the rights and other legal relations of any interested party" in "a case of actual controversy within its jurisdiction," regardless of whether "further relief is or could be sought." 28 U.S.C. § 2201(a).

The purpose of the Declaratory Judgment Act is "to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the

damage has accrued." *Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989) (quotations and citations omitted). The Act "was also intended to provide a mechanism for resolving a justiciable controversy before it evolves into a violation of the civil or criminal law or a breach of a contractual duty." *Penn-America Ins. Co. v. Haros, LLC*, 2023 WL 2997863, *6 (5th Cir. 2023) (citation omitted). "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000) (*quoting New Orleans Public Services, Inc. v. Council of the City of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987)).

A declaratory judgment action is ripe for adjudication "where an 'actual controversy' exists." *Haros*, 2023 WL 2997863, *7 (*citing* 28 U.S.C. § 2201(a)). As a general rule, an actual controversy exists where a "substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Orix Credit Alliance, Inc.*, 2012 F.3d at 897 (*quoting Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986)). "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Haros*, 2023 WL 2997863, *7 (*quoting Orix Credit Alliance, Inc.*, 212 F.3d at 896)).

Here, there is an actual controversy between the parties. Both the Shaw and the Oxy Defendants have demanded coverage for the Underlying Lawsuits under the Westchester Policies. Westchester maintains that there is no coverage under its Policies. Here, Westchester requests that the Court render a judgment declaring that it has no obligation to defend or indemnify these Defendants. Westchester does not seek an advisory opinion based on hypothetical facts; it seeks resolution of discrete policy-interpretation issues—including whether for example, exclusions apply and underlying primary policies have been exhausted—that will govern defense and

indemnity obligations, if any, regardless of how the Underlying Lawsuits are resolved. This is precisely the type of dispute the Declaratory Judgment Act was designed to resolve. *See Griffin*, 876 F.2d at 28 (the purpose of the Declaratory Judgment Act is "to afford one threatened with liability an early adjudication without waiting until his adversary should see fit to begin an action after the damage has accrued.").

Deferring judgment on indemnity coverage until the Underlying Lawsuits are fully resolved imposes a real and practical hardship on Westchester, requiring it to navigate settlement discussions under a cloud of uncertainty whether any indemnity reimbursement would be covered. An actual controversy between the parties exists: do the Westchester Policies require Westchester to defend and indemnify the Shaw and Oxy Defendants in the Underlying Lawsuits? *See Montpelier U.S. Ins. Co. v. Henry*, 2014 WL 1713407, at *3 (W.D. La. 2014) ("An actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action ***that has not yet proceeded to judgment***.") (emphasis added).

Fifth Circuit Court of Appeals precedent squarely refutes the Shaw and Oxy Defendants' assertions that they must incur a judgment or settlement before any obligation to indemnify is justiciable. *See Western Alliance Ins. Co. v. N. Ins. Co. of NY*, 176 F.3d 825, 828 (5th Cir. 1999) ("The duty to indemnify may be justiciable in a declaratory judgment action **before a determination of the insured's underlying liability** if the complaint does not trigger the duty to defend and no facts can be developed in the underlying suit that could trigger the duty to indemnify.") (emphasis added); *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) ("An actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured **in a state court action that has not**

**yet proceeded to judgment**.") (emphasis added); *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378 (5th Cir. 1998) (insurer's suit to establish the absence of coverage was justiciable under the Declaratory Judgment Act, **despite the absence of a judgment in the underlying suit**) (emphasis added); *see also Columbia Cas. Co. v. Georgia & Fla. RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008) ("[w]here the duty to defend is not at issue and where it is apparent before liability is resolved in the underlying case that the policy cannot cover the claim, the question of indemnity may be determined."); *Gilchrist Construction Company, LLC v. Travelers Indemnity Corporation*, 416 F.Supp.3d 619 (W.D. La. 2019) (**indemnity was justiciable prior to resolution of the underlying suit** because there was "no additional evidence before the Court that would change the determination of coverage, and there is no set of circumstances before the Court that would result in a determination that coverage under the policy exists….") (emphasis added); *Canal Indem. Co. v. Rapid Logistics Inc.*, 514 Fed.Appx 474 (5th Cir. Feb. 22, 2013) (district court did not err in holding that the issue of **duty to indemnify was justiciable before underlying state court suit was resolved**) (emphasis added); *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997) (the duty to indemnify is justiciable even before insured's liability is determined where no facts could be developed in tort suit that would bring a drive-by-shooting within the policy's coverage for auto accidents).[17]

Moreover, it is well-settled that a district court may adjudicate duty to indemnify claims before an entry of judgment where "the insurer has no duty to defend and the same reasons that negate the defense likewise negate any possibility the insurer will ever have a duty to indemnify." *Arch Ins. Co. v. Outreach Community Development Corp.*, No. 15-721-JWD-EWD, 2017 WL

---

[17] *Endurance Am. Ins. Co. v. ABC Caulking Contractors, Inc.*, No. CV 20-174-JWD-RLB, 2021 WL 4097142, *8 (M.D. La. Sept. 8, 2021) (noting that because the Fifth Circuit has stated that Texas and Louisiana apply essentially the same rules with respect to an insurer's disputed duties to defend and indemnify, Fifth Circuit jurisprudence involving Texas law will apply with equal force).

8944048, *5 (M.D. La. Dec. 21, 2017) (citations omitted)); *see also Circle C Enterprises, Inc. v. Associated Industries Ins. Co.*, No. 21-253-JWD-RLB, 2022 WL 16727129, *8 (M.D. La. Nov. 4, 2022) ("Here, because there is no possibility of coverage triggering the duty to defend, the Court finds that there also can be no duty to indemnify Plaintiff in connection with the claims brought by Axiall."); *Moore v. Home Depot U.S.A., Inc.*, No. 16-cv-00810, 2017 WL 5180431, at *5 (M.D. La. Nov. 8, 2017) ("[T]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the defense likewise negate any possibility the insurer will ever have a duty to indemnify.") (internal quotations omitted).

The Fifth Circuit Court of Appeal's decision in *Rapid Logistics, Inc.*, illustrates this point. 514 Fed.Appx. 474. In that case, the insurer filed a declaratory complaint seeking a ruling that it had no duty to defend or indemnify its insured for injuries a driver suffered in an auto accident because the driver was the insured's employee, triggering the policy's employer's liability exclusion. *Id.* The court held that because there was no question that the driver was the insured's employee, there was "no conceivable proof that could be developed in the state court action that would transform the accident into one that is covered by the policy." *Id.* at 479; *see also LCS Corrections Services, Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 672 (5th Cir. 2015) (duty to indemnify justiciable where medical services exclusion precluded both duty to defend and duty to indemnify); *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 458 (5th Cir. 2009) (duty to indemnify justiciable where pollution exclusion precluded both duty to defend and to indemnify); *Century Sur. Co. v. Hardscape Const. Specialties Inc.*, 578 F.3d 262, 270 (5th Cir. 2009) (duty to indemnify justiciable where insurer defeated duty to defend and indemnity claims based on contractual liability exclusion); *Star-Tex Resources, L.L.C. v. Granite State Ins. Co.*, 553

Fed.Appx. 366, 373 (5th Cir. 2014) (duty to indemnify justiciable because auto exclusion both negated duty to defend and precluded any possibility that insurer would have to indemnify plaintiffs).

Here, Westchester seeks a declaration that it has no duty to defend or indemnify the Defendants on several grounds, including but not limited to under the Silica and Dust Exclusion and the Total Pollution Exclusion. As a general rule, the duty to defend "is determined by the allegations of the plaintiff's petition [against the insured]..." *Steptore v. Masco Const. Co.*, 643 So.2d 1213, 1218 (La. 1994). If there is no duty defend, there is no duty to indemnify. *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998). Thus, "[i]t is settled that when an exclusion to a policy is applicable**, the insurer owes no duty to defend or indemnify the insured**." *La. Citizens Prop. Ins. Co. v. Age*, 104 So. 3d 675, 677, 677 (La. App. 4 Cir. 2012) (emphasis added).

Based on these well-settled principles, the duty-to-defend and duty-to-indemnify issues are justiciable here. The Dust and Silica Exclusion, for example, bars coverage for injury "arising out of, resulting from, or in any way related to, in whole or in part, the respiration, inhaling or breathing in of dust or particulate matter, including salt, metals, and aerosols:

> This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of, resulting from, or in any way related to, in whole or in part, the respiration, inspiration, ***inhalation*** or breathing in of dust or particulate matter. Dust or particulate matter may include, but is not limited to: dust, particulate matter, inspirable dust, respirable dust, smoke, mist, dirt, fibers, grit, soot, ***salt***, acids, bases, ***metals, aerosols***, crystals, minerals, sand, silicates, or silica.
>
> The addition of this endorsement does not imply that other policy provisions, including but not limited to any pollution exclusion or asbestos exclusion, do not also exclude coverage for dust or particulate matter related injury, damage, expense, cost, loss, liability, or legal obligation.

(R. Doc. 46, ¶ 57) (emphases added). The Underlying Lawsuits allege bodily injuries arising out of, in whole or in part, alleged exposure to mercury (a slivery-white poisonous *metallic* element), including inhalation, ingestion, and other absorption of dangerous levels of mercury, mercury vapors, and other toxic chemicals, which injuries are excluded from coverage by the Dust and Silica Exclusion. (Second Am. Compl., R. Doc. 46, ¶¶ 54–63). Thus, since the Dust and Silica Exclusion precludes both the duty to defend and the duty to indemnify, both issues are justiciable and ripe for resolution for the same reasons.

Similarly, the Total Pollution Exclusion bars coverage for injury that would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time. (Second Am. Compl., R. Doc. 46, ¶¶ 64–76). The Total Pollution Exclusion defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (*Id.*). The Underlying Lawsuits unambiguously allege exposure to mercury or other toxic chemicals as a result of the underlying defendants' emitting, spreading, or releasing of mercury or other toxic chemicals at the River Road Facility. Thus, since the Total Pollution Exclusion precludes both the duty to defend and the duty to indemnify, both issues are justiciable and ripe for resolution for the same reasons.[18]

Not deterred, the Shaw and Oxy Defendants[19] cite a series of distinguishable, mostly unpublished decisions for the unremarkable proposition that indemnity issues are not always ripe

[18]Without expressly addressing any of these issues, the Shaw Defendants simply speculate that "there is no chance any of the underlying claims could be covered under the policy down road." This ignores that the duty to defend and the duty to indemnify may be determined by application of an exclusion to the underlying complaint, as addressed above.

[19]The Oxy Defendants' "Response" is also improper because they have already filed an answer and counterclaim to Westchester's Second Amended Complaint (R. Doc. 49). Therefore, the Oxy Defendants have waived the right to file a pre-answer motion to dismiss. *See, e.g.*, Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.")

while the underlying litigation is pending. But every cited case involves circumstances where the insurer did not contest the duty to defend,[20] where the court had already determined that there was no duty to defend,[21] or where the factual record was otherwise inadequate to foreclose the possibility of indemnity coverage.[22] Here, by contrast, Westchester seeks a ruling that it has no duty to defend and by extension for the same reasons and factual record that preclude a defense obligation also unambiguously foreclose the possibility of indemnity coverage.

Demonstrating that no good deed goes unpunished, the Shaw Defendants reference Westchester's "own actions" in defending them in the Underlying Lawsuits "but subject to a reservation of rights." *See* Motion at 12. Of course, a defense under a reservation of rights is not an admission of coverage, though the Shaw Defendants suggest otherwise. Rather, "[t]o protect its own interest, an insurer can simultaneously provide its insured with a defense and contest coverage with its insured." *Breazeale v. T.T,* 177 So.3d 192, 198 (La. App. 1st Cir. 2013) (*citing Dugas Pest Control of Baton Rouge, Inc. v. Mutual Fire, Marine and Inland Ins. Co*., 504 So.2d 1051, 1054 (La. App. 1st Cir. 1987)). Westchester contests coverage. Unless the Shaw Defendants concede that there is no coverage, the defense and indemnity issues Westchester raises for resolution by the Court are ripe for review and decision. Therefore, the Shaw and Oxy Defendants' ripeness and

---

[20] *See Century Surety Co. v. RTI Services, LLC*, 2025 WL 2851875 (5th Cir. Oct. 8, 2025) (indemnity issue was speculative and hypothetical because underlying litigation was still pending and any duty under excess policy arose only when the limits of the primary policy have been exhausted); *Solstice Oil & Gas I, LLC v. Seneca Ins. Co.,* 655 Fed. Appx. 221 (5th Cir. July 21, 2016) (the duty to indemnify is nonjusticiable because insurer's actions—conceding that it had a duty to defend—foreclosed any argument that the same reasons that negate the duty to defend likewise negate any possibility that will never have a duty to indemnify).

[21] *See Martco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d 864 (5th Cir. 2009) (where the court did not address ripeness or justiciability issue, but concluded that "we must apply the Policy to the actual evidence adduced at the underlying **liability trial together with any evidence introduced in the coverage case**.") (emphasis added); *Travelers Cas. & Sur. Co. of Am. v. Univ. Facilities, Inc*., CIV.A. 10-1682, 2012 WL 1198611 (E.D. La. Apr. 10, 2012) (finding no duty to defend and insurer cannot demonstrate that underlying claims are unambiguously excluded from coverage).

[22] *Coregis Ins. Co. v. School Board of Allen Parish*, 2008 WL 2325632 (5th Cir. June 6, 2008) (further factual development in underlying litigation was necessary before the court could decide whether "criminal acts" exclusion precluded indemnity coverage).

justiciability arguments fail and this Court should deny the Shaw Defendants' motion to dismiss under 12(b)(1) or 12(b)(6).

### B. The *Trejo* Factors Weigh in Favor of the Court Exercising Jurisdiction Over the Indemnity Claims

The Shaw Defendants alternatively argue that the Court should dismiss or stay Westchester's declaratory judgment complaint as to the duty to indemnify. *See* Motion at 14. In determining whether to exercise their discretion to decide or dismiss a declaratory judgment action, courts in the Fifth Circuit consider seven non-exclusive factors under *Trejo*:[23]

1) Whether there is a pending state action in which all of the matters in controversy may be fully litigated;

2) Whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

3) Whether the plaintiff engaged in forum shopping in bringing the suit;

4) Whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

5) Whether the federal court is a convenient forum for the parties and witnesses;

6) Whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and

7) Whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel suit between the same parties is pending.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994) (citations omitted).

[23] The Shaw Defendants identify four different but similar factors for the Court to consider in determining whether to exercise jurisdiction under the Declaratory Judgment Act. *See* Motion at 15. However, the Fifth Circuit has repeatedly reaffirmed that it utilizes the *Trejo* factors to guide a district court's exercise of discretion to accept or decline jurisdiction over a declaratory judgment suit, such that Westchester applies those factors here. *See, e.g.*, *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 389–90 (5th Cir. 2003) (noting that each circuit has similar tests for exercising jurisdiction over a declaratory judgment suit, and the Fifth Circuit uses the *Trejo* factors).

The first *Trejo* factor, whether there is a pending state action in which all of the matters in controversy may be fully litigated, weighs in favor of this Court exercising discretion to decide the indemnity claims. This action is the only action in which the question of Westchester's obligations under the Westchester Policies is being litigated. Further, though the Shaw Defendants state that Delaware procedural law permits the assertion of third-party claims and declaratory relief concerning insurance coverage, any suggestion that Westchester should be joined as a third-party to the hundreds of Underlying Lawsuits to address the coverage issues properly before this Court is nonsensical. Nor would it serve judicial economy for any of the parties to commence an entirely new (and similar) declaratory judgment action in Delaware state court when this Court has jurisdiction to decide the coverage claims and will analyze those claims under applicable Louisiana law.

The second and fourth *Trejo* factors also favor maintaining jurisdiction over and proceeding with this case. With respect to factor two, though the Shaw Defendants unpersuasively suggest that Westchester's filing this action in Louisiana "suggests forum shopping" because Louisiana is "far removed from the locus of operative facts,"[24] they conveniently omit that the Westchester Policies were issued to the Shaw Defendants in Louisiana and accordingly, Louisiana law applies to the insurance coverage questions raised in this action.

With respect to factor four, possible inequities, the Shaw Defendants posit that this Court's retention of jurisdiction would "foster piecemeal litigation involving only one of multiple layers of insurance coverage" and would therefore create a risk of inconsistent factual or legal determinations in coverage rulings, including with respect to applicability of exclusions,

[24] *See* Motion at 15.

exhaustion, allocation, etc., which would result in "possible inequitable outcomes among insurers and insureds." *See* Motion at 15. This argument fails for three reasons.

First, there is no other pending litigation concerning any of the "multiple layers of insurance coverage." Second, even to the extent that another litigation were to commence concerning a different layer of coverage, such litigation would necessarily concern different insurers and insurance policies, and therefore different terms of coverage and policy exclusions. The risk of inconsistent factual or legal determinations is inherent in such a situation, because the court is making determinations based on different factual and legal issues. And third, the real risk of inconsistent factual or legal determinations would result from Westchester being forced to bring the indemnity claims elsewhere, or from forcing Westchester to have those claims decided separately from the duty to defend analysis, when both analyses can and should be done together.

Factors five and six also weigh in favor of Westchester. Regarding the fifth factor, this Court is a convenient forum for the parties. It is Westchester's understanding that the majority of the Defendants, including the Shaw Defendants, maintain principal places of business within the Fifth Circuit. Further, the coverage issues in this action should not require the plaintiffs in the Underlying Lawsuits to be witnesses. Factor six, judicial economy is also served by retaining jurisdiction over the indemnity claims. This action is the only action in which Westchester's coverage obligations are being determined, and it would not serve judicial economy to force Westchester to join the over-two-hundred plaintiffs in the Underlying Lawsuits, as the Shaw Parties seemingly suggest. Nor would it serve judicial economy to force Westchester or another party to file the same or a similar suit in Delaware state court, where this action has already made progress and where the issues to be decided will be decided under Louisiana law.

In addition, because Westchester's duty to defend and indemnify can be determined at the same time, judicial economy is better served by allowing the indemnity issues to move forward in this Court. In fact, if the Court denies the motion, Westchester intends to move for judgment on the pleadings with respect to the Silica and Dust Exclusion and the Total Pollution Exclusion. If the Shaw Defendants prevail on their motion, on the other hand, the parties will be forced to litigate the joint issues of Westchester's duty to defend and indemnify separately, adding many months, if not years, to this litigation.

## V. CONCLUSION

For the reasons discussed above, Westchester respectfully requests that the Court deny the Shaw Defendants' Motion to Dismiss or in the Alternative, Stay Claims for Declaratory Judgment on the Duty to Indemnify. Among other things, the Shaw Defendants have not established (1) that "it appears certain that [Westchester] cannot prove any set of facts in support [its] claim that would entitle [Westchester] to relief and (2) that, accepting all well-pleaded facts in the complaint as true, and viewing them in the light most favorable to Westchester, Westchester cannot prevail on its request for a declaration that it does not owe either the Shaw Defendants (or the Oxy Defendants) indemnity coverage under its Policies for the Underlying Claims. The Shaw Defendants also have failed to established that a stay of the indemnity issues is warranted here.

Respectfully submitted:

/s/ Leah N. Engelhardt
Leah N. Engelhardt (#23232)
CHAFFE MCCALL, L.L.P.
1100 Poydras St., Suite 2300
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
Email: engelhardt@chaffe.com

And

Ronald P. Schiller (*pro hac vice*)
Michael R. Carlson (*pro hac vice*)
Erin Gallagher (*pro hac vice*)
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel.: (215) 568-6200
Email: rps@hangley.com
mrc@hangley.com
ebg@hangley.com

***Attorneys for Plaintiff, Westchester Fire Insurance Company***