IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Westchester Fire Insurance Company, *Plaintiff,* | § | Civil Action No. 25-906-BAJ-EWD |
| v. | § | District Judge Brian A. Jackson |
| | § | |
| The Shaw Group, Inc., *et al.* *Defendants.* | § | Mag. Erin Wilder-Doomes |

**SHAW PARTIES' REPLY**

CB&I Group Inc., formerly known as The Shaw Group, Inc., and CB&I Energy Services, LLC formerly Shaw Global Energy Services, Inc. (collectively, "Shaw Parties") submit this Reply to Westchester Fire Insurance Company's ("Westchester") Opposition [R. Doc. 61], and in further support of the their Motion to Dismiss or in the Alternative, Stay Claims for Declaratory Judgment on the Duty to Indemnify [R. Doc. 50].

**WESTCHESTER'S DECLARATORY ACTION AS TO ITS DUTIES TO INDEMNIFY IS NOT RIPE AND NOT JUSTICIABLE**

**1) Duty to Defend and Duty to Indemnify Are Separate and Distinct**

A basic flaw in Westchester's reasoning is that it conflates the *separate and distinct* duties to defend and indemnify as if they are one and the same, when they are instead separate and distinct.[1] Indeed, many of the cases cited by Westchester acknowledge this distinction,[2] which serves to protect the insured by making liability insurance function as litigation protection prior to a determination of responsibility for indemnity after liability is established. Recognizing the distinctness of the duties to defend and indemnify is foundational to understanding the prematurity of Westchester's duty-to-

[1] *See Cambridge Int. Servs. Grp., Inc. v. Concentra Integrated Servs., Inc.*, 697 F.3d 248, 254 (5th Cir. 2012); *Morad v. Aviz*, 2013 WL 1403298, at *3 (E.D. La. Apr. 5, 2013); *Martco Ltd. P'ship v. Wellons*, Inc., 588 F.3d 864, 872 (5th Cir. 2009) (citing *Elliot v. Cont'l Cas. Co.*, 06-1505 (La. 2/22/07); 949 So.2d 1247, 1250); R-Doc. 50-1, Opp., pp. 7-9.
[2] *See, e.g., Moore v. Home Depot U.S.A., Inc.*, 2017 WL 5180431, at *5 (M.D. La. Nov. 8, 2017) ("The duty to indemnify is governed by separate principles from a duty to defend"; cited at Opp. p. 10); *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668 (5th Cir. 2015) ("Under both Texas and Louisiana law, the duty to defend and the duty to indemnify are separate duties, determined by differing principles"; cited at Opp. p. 10).

indemnify claim, which is presumably why Westchester ignores it.

### 2) **The *General Rule* is that Determination of the Duty to Indemnify Must Await the Outcome of the Underlying Litigation**

Westchester also ignores that it is the *general rule* that "the duty to indemnify cannot be determined until the insured's liability has been resolved, because the duty to indemnify 'is triggered by the actual facts that establish liability in the underlying suit.'"[3] Westchester's own cited authorities recognize this general rule.[4] Although Westchester avoids saying so, what Westchester seeks is the application of an *exception* to this general rule.

Westchester avoids acknowledging the controlling standard because the exception to the general rule is, as Judge deGravelles recently described, an "exceedingly narrow exception." *Endurance Am.*, 2021 WL 4097142, at *8 (M.D. La. Sept. 8, 2021).[5] Pursuant to this narrow exception, courts can adjudicate duty-to-indemnify claims before resolution of the underlying suit ***only if*** two requirements are satisfied:

> First, the court must determine through application of the eight corners rule that the insurer does not owe a duty to defend. Second, the court must determine that the same reasons the insurer owes no duty to defend also show that there is ***no chance*** any of the underlying claims could be covered under the policy down the road.

*Id.* (emphasis added). This "exceedingly narrow exception" is properly invoked only when "there is ***no possibility*** that the insurer will ever have a duty to indemnify." *Id.*

Instead of addressing this legal framework head-on, Westchester asserts (at Opp. pp. 8-9) that Fifth Circuit precedent "refutes" the well-established general rule. This is simply wrong. Westchester ignores more recent Fifth Circuit and Middle District cases (cited above) in favor of decisions that are older, inapposite[6], or because they involve much simpler underlying litigation in which the narrow

---

[3] *Endurance Am. Ins. Co. v. ABC Caulking Contractors, Inc.,* 2021 WL 4097142, at *7 (M.D. La. Sept. 8, 2021) (citing *Columbia Cas. Co.*, 542 F.3d at 110 (5th Cir. 2008)).

[4] *See, e.g.*, *LCS Corr. Servs.,* 800 F.3d at 668 (unlike the duty to defend, "we generally evaluate the insurer's duty to indemnify after the parties have developed the actual facts that establish liability in the underlying lawsuit"; cited at Opp. p. 10); *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F3d 453, 458 (5th Cir. 2009) ("Generally speaking, the duty to indemnify is decided only after the underlying liability case is concluded"; cited at Opp. p. 10).

[5] Other than to reference it in a footnote for an unrelated proposition, Westchester ignores Judge deGravelles' decision in *Endurance Am. Ins.* and its clear description of the "exceedingly narrow exception" to the general rule.

[6] For example, Westchester cites at page 9 of its Opposition, *Columbia Cas. Co. v. Georgia & Fla. RailNet, Inc.*, 542 F.3d 106, 111 (5th Cir. 2008), a case in which the insurance policy did not provide for a duty to defend, which rendered the issue ripe for determination under case law unique to Texas. *Endurance Am. Ins.*, 2021 WL 4097142 at *11 ("the

exception was met. For example, Westchester cites *Western Alliance Ins. Co. v. N. Ins. Co. of NY*, 176 F.3d 825, 828 (5th Cir. 1999) for the unremarkable proposition that that the duty to indemnify "may" be decided before resolution of the underlying suit. Westchester's statement is woefully incomplete. As explained in *Endurance Am.*, the duty to indemnify *may* be decided early on but *only if* the insurer meets the "exceedingly narrow exception."

Westchester also relies on jurisprudence that is no longer controlling. Westchester states that "[i]f there is no duty to defend, there is no duty to indemnify," citing *American States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998), in which the court stated that "[l]ogic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify." However, <u>this reasoning has since been emphatically rejected</u>. *Liberty Mutual Fire Ins. Co. v. Copart of Connecticut, Inc.*, 75 F4th 522, 535 (5th Cir. 2023) (the "*ipso facto* rule [stated in Bailey] has been ***abrogated*** in the years since Bailey").[7]

The only case Westchester discusses in any depth on the justiciability question is *Canal Indem Co. v. Rapid Logistics*, 514 Fed. Appx. 474 (5th Cir. Feb. 22, 2013) (*per curiam*); but *Rapid Logistics* involves very different, much simpler, and undisputed facts. *Rapid Logistics* involved a *single* underlying plaintiff (Olivas) in *one* lawsuit suing the trucking company (Rapid Logistics) that had hired a tractor-trailer from an independent contractor (Sanchez) who employed Olivas as the driver of the truck in an accident. The insurance policy excluded coverage for the "owner, or any 'employee,' agent or driver of the owner." As "the material facts (Olivas was Sanchez's driver employee)" were "*not in dispute*," the insurer was able to show that "there is *no conceivable proof* that could be developed in the state court action" to establish coverage. *Id.* at 479. *Rapid Logistics* addressed a situation nothing like the instant case in which there are hundreds of underlying plaintiffs in over 200

indemnity issue [in *Columbia Cas. Co.*] did not satisfy the exception" to the general rule that the duty to indemnify should await resolution of the underlying litigation; instead, "the indemnity claim was ripe because another exception was met—one born out of a Texas appellate court's decision").

[7]Westchester also relies on *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex. 1997), while ignoring subsequent jurisprudence clarifying that "an insurer's duties to defend and indemnify its insured are 'distinct and separate' and rejecting the "faulty assumption" that "there can be no duty to indemnify absent a duty to defend." *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 252-54 (5th Cir. 2011); *see also D.R. Horton–Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex.2009).

lawsuits and the applicability of Westchester's will be hotly contested.

Another case cited by Westchester demonstrates how narrow the exception is to the general rule that "[t]he duty to indemnify generally does not arise until the indemnitee actually makes payment or sustains loss." *Arch Insurance Co. v. Outreach Community Development Corp.*, 2017 WL 8944048, at *5 (M.D. La. Dec. 21, 2017) (Opp., pp. 9-10). In *Arch*, the insurer sought a declaration that it had no duty to defend or indemnify its insured in connection with an underlying asbestos case. *Id.* at **1-3. Judge deGravelles applied the general rule and found that the claims asserted by the single plaintiff in the underlying action were excluded by either the Asbestos Exclusion or the work product exclusion in the policy at issue. *Id.* at **6-7. Judge deGravelles even opined that on the facts presented in *Arch*, it appeared "very likely that any claim that Old School [the underlying plaintiff] will state against Outreach or Cawthorne [the insureds] will be covered by the Asbestos Exclusion or one of the other exclusions." *Id.* at *7. Nevertheless, the court still *rejected* the insurer's request for a finding on the duty to indemnify because:

> notwithstanding the allegations in the Petition for Damages, it appears *possible* that the underlying action will broaden or change to encompass some claim that might be covered under the Policy. Moreover, the Court discerns little risk in leaving the duty to indemnify to be decided at another time in view of the facts as they actually exist.

*Id.* The same reasoning applies even more so to the much more complex instant case.

**3) <u>Westchester Has No Evidence to Establish That There is "No Possibility" of Coverage</u>**

Westchester relies on two policy exclusions to claim that it has "no duty to defend or indemnify" the Shaw Parties (or other defendants) in the underlying Delaware cases: the "Silica and Dust Exclusion" and the "Total Pollution Exclusion." (Opp., pp. 11-12). Westchester fails, however, to offer any evidence to carry its heavy burden to prove the exclusions apply to preclude *any possibility* of an indemnity obligation at the conclusion of the 200+ underlying cases. *See Endurance Am.*, 2021 WL 4097142 at *8. Instead, Westchester describes the allegations of the lawsuits by citing its own descriptions of the allegations from its Amended Complaint [R. Doc. 46]. Westchester does not cite the Delaware petitions themselves, much less submit any of the petitions as evidence. Therefore, Westchester has failed to support its mere assertions, and the Shaw Parties' motion should

be granted for this reason alone. Moreover, whatever is *alleged* in the Delaware lawsuits only informs the "eight corners" analysis for the *duty to defend*; while the instant motion addresses only the prematurity of Westchester's *duty-to-indemnify* claim. Westchester has failed to show that there is "no possibility" that it could be called upon to indemnify the Shaw Parties in any of the 200+ underlying lawsuits.

**4) Westchester Has Failed to Establish That the Exclusions Preclude Coverage**

***Westchester has Burden of Proving Applicability of Exclusions; to be Construed Narrowly***

The burden is on the insurer to prove the applicability of an exclusionary clause within the policy. *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So.2d 119, 124. In making this determination, courts must construe any ambiguities within the policy in favor of the insured to effect, not deny, coverage. *Id.* It is well-settled that exclusions from coverage are construed narrowly against exclusion and in favor of coverage.[8] "The interpretation of the policy most favorable to the insured must be adopted" since it "is the duty of the insurer to clearly express exclusions or limitations in a liability policy."[9] These rules of interpretation require courts to construe exclusion clauses strictly and adopt the interpretation most favorable to the insured.

***Westchester Did Not Prove Applicability of Dust and Silica Exclusion***

In a single paragraph, much of which consists of quoted policy language, Westchester blithely concludes that the Dust and Silica Exclusion precludes the duty to defend and that "[i]f there is no duty [sic] defend, there is no duty to indemnify," citing *Bailey*, 133 F.3d at 368. As addressed above, the *ipso facto* reasoning in *Bailey* has long been rejected and is not the law in the Fifth Circuit. *See Copart of Connecticut*, 75 F4th at 535; *Peachtree Const.*, 647 F.3d at 252. In addition to Westchester's inability to prove the applicability of the exclusion—or even cite the correct legal standard—there is ample reason to reject Westchester's mere assertion that there is "no chance," even now, of there being coverage in any underlying Delaware lawsuit.

---

[8] *Smith v. Matthews*, 611 So.2d 1377, 1380 (La. 1993); *Reynolds v. Select Properties, Ltd*., 93-1480 (La. 11/4/94); 634 So.2d 1180, 1183 ("if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied") (citations omitted).

[9] *Primm v. State Farm Fire & Cas. Co.*, 426 So.2d 356, 360 (La. App. 2 Cir. 1983) (citation omitted).

The Dust and Silica exclusion states that:

> "This insurance does not apply to any injury, damage, expense, cost, loss, liability or legal obligation arising out of, resulting from, or in any way related to, in whole or in part, the **respiration, inspiration, inhalation or breathing** in of **dust or particulate matter**. Dust or particulate matter may include, but is not limited to: dust, particulate matter, inspirable dust, respirable dust, smoke, mist, dirt, fibers, grit, soot, salt, acids, bases, metals, aerosols, crystals, minerals, sand, silicates, or silica.
> *The addition of this endorsement does* not imply that other policy provisions, including but not limited to any pollution exclusion or asbestos exclusion, do not also exclude coverage for dust or particulate matter related injury, damage, expense, cost, loss, liability, or legal obligation."

(Opp., pp. 11-12) (emphasis added). Westchester argues that the underlying lawsuits allege exposure by "inhalation, ingestion, and dermal absorption" to, *inter alia*, "mercury vapors." (R. Doc. 61, Opp., p. 3; R. Doc. 46 at ¶ 61). Westchester has not shown, however how the exclusion applies to exposure by ingestion or dermal absorption, or how an exclusion relating to "dust or particulate matter" applies to mercury *vapor*, which is a gas. Therefore, Westchester cannot show—and has certainly failed to meet its high burden to prove here—that its exclusion unambiguously excludes what all of the Delaware plaintiffs may ultimately prove at trial in connection with their current allegations of exposure or contact with gasses. Indeed, the distinction between "vapor" and "particulate" is well-recognized in the policy, as "vapor" is referenced in the Pollution Exclusion but not in the Dust and Silica Exclusion. (Opp., p. 12). Furthermore, if "dust or particulate matter" were read to include vapors, then the Policies' separate references to "vapor," "fumes," or "gases" become meaningless. For these reasons, the exclusion is likely inapplicable on its face.

The duty to indemnify is triggered by the *actual facts* that establish liability in the underlying suit. *Endurance Am. Ins.*, 2021 WL 4097142, at *7 (citing *Columbia Cas. Co.*, 542 F.3d at 110 (5th Cir. 2008); *Guar. Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir. 2000) (overruled on other grounds); and *Martco*, 588 F.3d at 872). Westchester's own representation of the Underlying Lawsuits' allegations refer to alleged exposure by ingestion or dermal absorption, to which the language of the exclusion ("...respiration, inspiration, inhalation or breathing…") does not apply. Moreover, the Shaw Parties believe that the evidence will show that mercury vapor is a gas and not particulate matter suspended in air like silica or dust to which the exclusion is addressed. In any event,

Westchester has not met its burden to refute the possibilities completely as required to meet the "exceedingly narrow" exception to the general rule that the duty to indemnify is not determined until after the resolution of the underlying litigation. Until the toxicologists or other scientists testify in the underlying cases, it will not be known—much less proven--what, if anything, plaintiffs inhaled, ingested or dermally absorbed and whether it is a gas absorbed through the lungs as a vapor (as mercury vapor at room temperature is) and/or whether any dust or particulate was deposited mechanically in their lungs.

***Westchester Did Not Prove Applicability of "Total Pollution Exclusion"***

Continuing to ignore the weight of its burden to show that there is "no conceivable" proof that could be developed in the underlying Delaware litigation to establish non-excluded coverage, Westchester also argues that its policies' "Total Pollution Exclusion" precludes any possibility of coverage. (R. Doc. 61, Opp., p. 12). In so arguing, Westchester also ignores the Louisiana Supreme Court's well-settled guidance as to the meaning and applicability of the Total Pollution Exclusion.

The Louisiana Supreme Court's decision in *Doerr v. Mobil Oil Corp.,* 774 So.2d at 135 provides the applicable framework for analyzing applicability of the Total Pollution Exclusions in Louisiana.[10] In *Doerr v. Mobil Oil Corp.*, the court found that the "Total Pollution Exclusion" was neither designed nor intended to be read strictly to exclude coverage for all interactions with irritants or contaminants of any kind. 774 So.2d at 135. Instead, the Court found that it is appropriate to construe the pollution exclusion clause in light of its general purpose, which is to exclude coverage for environmental pollution and, under such interpretation, the clause shall not be applied to all contact with substances that may be classified as pollutants. [11] The *Doerr* court established that the applicability of a total pollution exclusion in any given case must necessarily turn on a three-part test that Louisiana courts use to determine the applicability of a pollution exclusion clause: (1) Whether the insured is a "polluter" within the meaning of the exclusion (2) Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion, and (3) Whether there a 'discharge,

[10] Federal Courts consistently apply the *Doerr* framework in subsequent cases. See e.g., *C. Crude, Inc. v. Liberty Mut. Ins. Co*., 51 F.4th 648, 654 (5th Cir. 2022).
[11] *Doerr,* 774 So.2d at 135.

dispersal, seepage, migration, release or escape' of a 'pollutant' by the insured within the meaning of the policy? *Doerr,* 774 So.2d at 135. If the insurer fails to establish that *all three* of these questions are answered in the affirmative, the pollution exclusion is not applicable. *Hanover Ins. Co. v. Superior Labor Services, Inc.*, 179 F.Supp.3d 656, 683 (E.D. La. 2016).

Westchester undertook no *Doerr* analysis whatsoever. It has not argued, much less shown, that the Shaw Parties were a "polluter." Such a determination is a fact-based conclusion that should encompass consideration of a wide variety of factors,[12] including: "(a) the nature of the insured's business; (b) whether that type of business presents a risk of pollution; (c) whether the insured has a separate policy covering the disputed claim; (d) whether the insured should have known from a reading of the exclusion that a separate policy covering pollution damages would be necessary for the insured's business; (e) who the insurer typically insures; (f) any other claims made under the policy; and (g) any other factor the trier of fact deems relevant to this conclusion.[13] "The nature of the insured's business and whether the insured's business presented a risk of pollution are of paramount consideration and are clearly the most important factors in the 'polluter' test."[14] Although the second determination—whether the injury-causing substance is a "pollutant"—is fact-based and encompasses a wide variety of factors,[15] Westchester has made no showing (or argument) to meet its burden. Whether there was a "discharge, dispersal, seepage, migration, release or escape" is also a fact-based conclusion that must result after a consideration of all relevant circumstances.[16] Westchester has submitted no evidence whatsoever regarding any of these factual *Doerr* factors and as a result has failed to meet its burden of showing that the exclusions will apply; which further establishes that this case does not fit within the exceedingly narrow exception to the general rule that the determination of the duty to indemnify must await resolution of the underlying lawsuits.

---

[12] *Doerr*, 774 So.2d at 135.
[13] *Id.*
[14] *Grefer v. Travelers Ins. Co.*, 04-1428 (La. App. 5 Cir. 12/16/05); 919 So.2d 758, 768.
[15] *Doerr*, 774 So.2d at 135. The court should consider: (a) The nature of the injury-causing substance; (b) Its typical usage; (c) The quantity of the discharge; (d) Whether the substance was being used for its intended purpose when the injury took place; (e) Whether the substance is one that would be viewed as a pollutant as the term is generally understood; and (f) Any other factor the trier of fact deems relevant to that conclusion. *Doerr*, 774 So.2d at 135.
[16] *Id.* at 135-36.

**ALTERNATIVELY, IF JUSTICIABLE (WHICH IT IS NOT): RESPECTFULLY THE COURT SHOULD EXERCISE DISCRETION UNDER *TREJO* FACTORS TO DISMISS**

The first *Trejo* factor is "whether there is a pending state action in which all of the matters in controversy *may* be fully litigated." *St. Paul v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).[17] Westchester's arguments in opposition fail to appreciate that this case and the underlying lawsuits present parallel factual issues, including defendants' negligence and whether it caused plaintiffs to suffer actual injury and the nature cause and extent thereof. Just as in *Branton Tools, LLC v. Exco Operating Co., LP*, CIV.A. 14-2417, 2015 WL 4662004, at *5 (W.D. La. Aug. 5, 2015), this court needs to decide if defendants are negligent to declare whether the plaintiffs owed them indemnity for an underlying state court negligence lawsuit. As a result, this court should similarly conclude "while the state court suit is not perfectly parallel to the federal court suit because the parties are not parallel, the issues of fact and law presented before the two courts will overlap and may lead to inconsistent rulings. Thus, this factor weighs heavily in favor of abstention." *Id*. at *6. The same is true here.

The second *Trejo* factor is "whether the plaintiff filed suit in anticipation of litigation" and the third factor is "whether the plaintiff engaged in forum shopping in bringing the suit." *Trejo,* 39 F.3d at 590-91. A district court analyzing the second *Trejo* factor must consider the timing of the filing of the federal action carefully. *Atain Specialty Ins. v. Bourgeois, No*. CV 15-6803, 2016 WL 1545758, at *4 (E.D. La. Apr. 14, 2016). As in *Atain*, the timing of the instant action suggest that Westchester filed in anticipation of litigation, which weighs in favor of dismissal.

The fourth *Trejo* factor, potential inequities due to precedence in time or forum, weighs towards abstention. Westchester appears to be attempting to gain an advantage regarding the scope of the insurance policy's coverage by racing to judgment in federal court. Westchester represented to this Court that, "[a]s soon as the pleadings are closed, Plaintiff intends to file a motion for judgment on the pleadings under Rule 12(c) on Counts I and II, seeking a ruling that the Silica, Dust, and Particulate Matter Exclusion and the Total Pollution Exclusion bar defense *and indemnity* coverage

[17] Note, Westchester misapplies this factor by improperly replacing the word "may," an expression of possibility, with the word "is," an expression of definiteness. *See May*, Wex, Cornell Law Sch., https://www.law.cornell.edu/wex/replevin (last visited Mar. 5, 2026). Westchester's remaining arguments on the first *Trejo* factor concern the judicial economy factor and are addressed below.

for all claims asserted against Defendants in the Underlying Lawsuits." [R. Doc. 62 at n3]. A ruling from this court regarding the scope of coverage for indemnity may be preclusive on the issue in state court. As the court similarly noted in *Atain*, such a "first to the finish line" strategic behavior is contrary to the values of fairness and weighs in favor of abstention. *Atain*, 2016 WL 1545758, at *5.

In *Montpelier*, cited by Westchester at Opp. p. 8, the court found the sixth *Trejo* factor weighed in favor of *dismissal* because the people who would be testifying in state court on liability were those "whose testimony will be critical on factual issues related to the insurance coverage issue." 2014 WL 1713407 at *7. The court concluded:

> Although whether an insurance policy affords coverage is a legal issue, there always are factual determinations that must be made before that legal issue can be resolved. In this case, interpretation of the policy provision cited by Montpelier will require determinations about the nature and design of the parade float, the ownership of the float's components, the way that the parade was conducted, the mechanics of the accident, and the nature of the damages sustained by the Henrys. Therefore, retaining the lawsuit in federal court would not serve the goal of judicial economy.

*Id*. at *7. Similarly, in this case there are more issues of fact that overlap with the over two hundred underlying lawsuits. Were this Court to retain jurisdiction over this lawsuit, the coverage issues before the court would necessarily require factual determination of issues overlapping the state court issues, including defendants' alleged negligence, whether it caused plaintiffs to suffer actual injury and the nature cause and extent thereof, including the science and toxicology of alleged mercury vapor.

Respectfully submitted,

Robert S. Stassi (La. Bar No. 25259)
Russell L. Foster (La Bar. No. 26643)
Charles Meeks (La. Bar. No. 40448)
CARVER DARDEN KORETZKY TESSIER
FINN BLOSSMAN & AREAUX LLC
1100 Poydras St., Suite 3100
New Orleans, LA 70163
Telephone: (504) 585-3800
Facsimile: (504) 585-3801

Attorneys for CB&I Group Inc. and
CB&I Energy Services, LLC

4898-6971-6628, v. 7